## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **MELISHA MILES, as Guardian of FRANCIS PATTON, an incapacitated Person,** | |
| *Plaintiff*, | **Case No. 24-CV-417-GAG-MTS** |
| **v.** | |
| **ROGERS COUNTY BOARD OF COMMISSIONERS, et al.,** | |
| *Defendants.* | |

### OPINION AND ORDER

**GUSTAVO A. GELPÍ, Circuit Judge.**[1]

Before the court is Defendant Turn Key Health Clinics, LLC's ("Turn Key") Motion to Dismiss (Dkt. No. 16) pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). For the reasons stated below, the motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

Plaintiff Melisha Miles ("Plaintiff"), as guardian of Francis Patton ("Patton"), alleges the following facts in the Complaint. On January 10, 2023, police officers conducted a well-being check on Patton. (Dkt. No. 2-2.) After he failed the Standard Field Sobriety test, the officers took him into custody under the suspicion that he was driving under the influence. (*Id.* at 6.) The officers did not obtain medical clearance for Patton before booking him into jail. (*Id.*) While Patton was in his jail cell, employees of the jail witnessed him behaving "erratically," including pacing, stripping naked, and "[u]sing his underwear to clean things." (*Id.* at 7.) Patton remained

---

[1] The Honorable Gustavo A. Gelpí, Circuit Judge, United States Court of Appeals for the First Circuit, sitting by designation.

untreated in the jail cell for approximately two days.  (*Id.* at 8.)

After those two days, Patton was transported to a mental health center and, later, to an emergency room.  (*Id.*)  At the emergency room, he was diagnosed with severe sepsis, acute kidney failure, rhabdomyolysis, a non-ST elevated myocardial infarction ("NSTEMI"), tachycardia, and fever.  (*Id.*)  He, ultimately, was admitted into an intensive care unit and remained hospitalized for over 60 days.  (*Id.*)  He was later diagnosed with HSV encephalitis which, with early detection and treatment, are "fully resolved with prescription medication."  (*Id.*)  Due to his HSV encephalitis, Patton is now "significantly debilitated," physically and mentally, and requires full-time care.  (*Id.* at 9.)  He has been declared incompetent and placed under guardianship.  (*Id.*)

On June 27, 2024, Plaintiff filed the Complaint alleging these facts against seven defendants.  (*Id.*)  Those defendants included: the Rogers County Board of Commissioners; Scott Walton (the Rogers County Sheriff); Zachary Starkey (the Jail Administrator of Rogers County); Brandon Masingale (the Assistant Jail Administrator of Rogers County); Turn Key (an independent contractor who provided medical services at the Amos G. Ward Detention Center (the "Detention Center")); and two John Does (defined, respectively, as all officers at the Detention Center and all medical personnel at the Detention Center).  (*Id.* at 2-3.)  Plaintiff sued under 42 U.S.C. § 1983, alleging violations of the Eighth and Fourteenth Amendments.  (*Id.* at 13-81; Dkt. No. 16 at 6.)  Plaintiff asserts that Defendants' two-day delay in seeking medical care for Patton resulted in his permanent incapacitation.  (Dkt. No. 2-2 at 13.)

As it relates to Turn Key, Plaintiff's Complaint stated that Turn Key has a business model that generates revenue through government contracts.  (*Id.* at 11.)  The Complaint further explained that, through those contracts, Turn Key "assumes responsibility for the government's obligation to provide healthcare services to people who are not free to seek out healthcare for themselves."  (*Id.*)  At the direction of Turn Key, the highest trained medical provider at each jail is generally a

Licensed Practical Nurse ("LPN").  (*Id.* at 12.)  Turn Key also "has a Nurse Practitioner or M.D." on call, who is available if a LPN believes that the advice or opinion of a qualified medical provider is needed.  (*Id.*)  LPNs cannot, themselves, assess or diagnose a medical condition.  (*Id.*)

Plaintiff asserts that Turn Key does not provide training to LPNs on the "symptoms which warrant contacting" a qualified medical provider.  (*Id.*)  Plaintiff also states that Turn Key is aware that this lack of training "creates a scenario whereby serious conditions of detainees go unassessed, undiagnosed, and untreated" because the LPNs do not know when to contact on-call medical providers.  (*Id.*)  Plaintiff insists that this deficiency results in a denial of necessary medical care and that Turn Key deliberately overlooks this truth, in favor of "turning profits for its shareholders."  (*Id.*)  Plaintiff complains that Patton's scenario occurred due to Turn Key's policy of "placing delusional, nonresponsive inmates into confinement without any form of medical attention or evaluation."  (*Id.* at 12-13.)  Turn Key moves to dismiss all claims against it for failure to state a claim pursuant to Rule 12(b)(6).

## II.    DISCUSSION

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's . . . complaint alone is legally sufficient to state a claim for which relief may be granted."  *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135 (10th Cir. 2014) (quoting *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010)).  A complaint is legally sufficient only if it contains factual allegations such that it states a claim to relief that "is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555 (internal citations omitted) (alteration original).  Instead,

"[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). For the purpose of making the dismissal determination, a court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996)).

In its motion to dismiss, Turn Key presses three main arguments: (1) Plaintiff did not set forth an actionable section 1983 deliberate indifference claim against Turn Key; (2) Plaintiff has failed to allege facts sufficient to support a section 1983 claim against Turn Key pursuant to the municipal theory of liability; and (3) Plaintiff's state law claims fail under the Oklahoma Governmental Tort Claims Act ("GTCA").

**A. Plaintiff pleaded facts sufficient to sustain the section 1983 deliberate indifference claim against Turn Key.**

"A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (citing *Estelle v. Gamble*, 429 U.S. 97, 102 (1976)). The deliberate indifference standard applies to pretrial detainees through the Fourteenth Amendment. *See Paugh v. Uintah Cnty.*, 47 F.4th 1139, 1153-54 (10th Cir. 2022) (citing *Burke v. Regalado*, 935 F.3d 960, 992 (10th Cir. 2019)). The Tenth Circuit applies "the two-part Eighth Amendment inquiry when a pretrial detainee alleges deliberate indifference to serious medical needs." *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1028 (10th Cir. 2020). "This exercise requires both an objective and a subjective inquiry." *Id.* (citing *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009)). "The objective component is met if the deprivation is 'sufficiently serious' . . . . The subjective component is met if a prison official 'knows of and disregards an excessive risk to inmate health or safety.'" *Sealock*, 218 F.3d

4

at 1209 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994)).

There are "two types of conduct constituting deliberate indifference. First, a medical professional may fail to treat a serious medical condition properly." *Id.* at 1211. Second, a prison official may "prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment." *Id.* If "the medical professional knows that his role . . . is solely to serve as a gatekeeper for other medical personnel capable of treating the condition, and if he delays or refuses to fulfill the gatekeeper role due to deliberate indifference, . . . he also may be liable for deliberate indifference from denying access to medical care." *Id.* Plaintiff alleges that the medical professionals failed to meet their duties under both types of conduct.[2] (Dkt No. 2-2 at 21.)

Turn Key concedes that Patton's alleged permanent incapacitation is "sufficiently serious to satisfy the objective component." (Dkt. No. 16 at 9-10.) It argues, however, that Plaintiff has not pleaded "facts sufficient to satisfy the subjective component." (*Id.* at 10.) Turn Key appears to make two arguments on that score: (1) that Plaintiff has not alleged facts to show it was "obvious that [Patton] was suffering from HSV encephalitis or any other serious medical condition" (*Id.*) and (2) that Plaintiff has not alleged that a "Turn Key medical provider knew of and disregarded a significant risk of harm facing [Patton] of being permanently incapacitated from HSV encephalitis" (*Id.* at 12). The court addresses each argument in turn.

**1. Obvious risk**

"When a risk is obvious, it is circumstantial evidence of an official's awareness of serious

---

[2] Turn Key's argument that "there is no constitutional right to an evaluation by "someone with more training" (Dkt. No. 16 at 10) is, thus, inapposite. Plaintiff has plausibly alleged that the Turn Key professionals knew their role was to serve as "gatekeepers" and that their actions were not sufficient to discharge that gatekeeping obligation. *See Mata v. Saiz*, 427 F.3d 745, 758–60 (10th Cir. 2005); (Dkt No. 2-2 at 21).

medical need." *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1139 (10th Cir. 2023) (citing *Self v. Crum*, 439 F.3d 1227, 1231-32 (10th Cir. 2006)). Turn Key emphasizes that "Plaintiff [did] not properly allege that HSV encephalitis has an obvious presentation or tell-tale signs and symptoms." (Dkt. No. 16 at 11.) It also states that "there is no basis whatsoever to find that [Patton's] alleged serious medical condition would have been obvious to a layperson." (*Id.* at 13.) Turn Key does not point to any case law that would demand either of these requirements. Nor could it, as the Tenth Circuit has plainly stated that "a medical condition is not required to be obvious to a layman to state a claim." *Lucas*, 58 F.4th at 1139.[3] Rather, obviousness to a layperson is:

> merely one of several contexts in which deliberate indifference can be shown. Circumstantial evidence of obviousness in a missed diagnosis or delayed referral appears in contexts including (1) recognition of inability to treat and still declining or unnecessarily delaying referral; (2) condition is so obvious a layman would recognize it; or (3) complete denial of care in the face of a medical emergency.

*Id.* (citing *Self*, 439 F.3d at 1232).

As Turn Key notes, the Tenth Circuit has held that "characteristics . . . common to many intoxicated individuals" may not always present an "obvious" risk. *See Martinez*, 563 F.3d at 1091. But, taking the Complaint's allegations as true, the court finds that a reasonable jury could conclude that the seriousness of the medical risks associated with the whole of Patton's symptoms would be obvious to a reasonable observer. *See Mata*, 427 F.3d at 752 (citing *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)). In particular, Plaintiff's allegations that Patton's symptoms worsened over time could support a jury's finding that it was "obvious" Patton needed medical assistance. *See Paugh*, 47 F.4th at 1158 ("[A] reasonable jury could find that it would have been 'obvious' to any reasonable jail official that [pretrial detainee] needed medical assistance if the

---

[3] This is especially true where, as here, a licensed medical professional is involved, whose "heightened knowledge and training can be highly relevant." *See id.*

Individual Defendants saw [pretrial detainee's] condition worsening." (citing *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002), *overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016))).

**2. Knowledge of the specific risk of harm**

The subjective component of a deliberate indifference claim "requires the prison official to disregard the risk of harm claimed by the prisoner." *Martinez*, 563 F.3d at 1089. Turn Key asserts that the Complaint "does not plead any facts that would support a theory that a Turn Key medical provider knew that Mr. Patton's alleged symptoms were as a result of his HSV encephalitis and that they did nothing." (Dkt. No. 16 at 11.) It also states that "[t]o be actionable, Plaintiff must properly allege that a Turn Key medical provider knew of and disregarded a significant risk of harm facing Mr. Patton of being permanently incapacitated from HSV encephalitis." (*Id.* at 12.)

Turn Key cites only *Crocker v. Glanz*, 752 F. App'x. 564 (10th Cir. 2018), in support of its argument on this point. (Dkt. No. 16 at 12.) But, as Plaintiff notes, the weight of authority shows that the Complaint need only allege that Turn Key was aware that Patton faced a substantial risk of harm to his health and safety. *See Lucas*, 58 F.4th at 1141 (citing *Farmer*, 511 U.S. at 842). Contrary to Turn Key's argument, the Complaint need not show that Turn Key was "consciously aware [Patton] had a specific ailment." *See id.* ("[T]he complaint need not show [defendant] was consciously aware [plaintiff] had a specific ailment -- cervical cancer -- but rather that [defendant] was aware [plaintiff] faced a substantial risk of harm to [plaintiff's] health and safety."). Plaintiff plausibly alleges that the Turn Key medical professionals were faced with symptoms of a serious medical condition, whether or not they knew at the time what that specific condition was. In short, this court cannot say that post-discovery, Plaintiff will not be able to "provide evidence supporting an inference that defendant[] knew about and disregarded a substantial risk of harm to [Patton's] health and safety." *See Mata,* 427 F.3d at 752 (citing *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th

Cir. 1999)).

**B. Plaintiff pleaded facts sufficient to sustain the Section 1983 claim against Turn Key pursuant to a municipal theory of liability.**

Turn Key next argues that Plaintiff has failed to "properly plead what is required to subject Turn Key to liability pursuant to the municipal theory of liability." (Dkt. No. 16 at 13.)

"Under *Monell*, a plaintiff may sue local governing bodies directly for constitutional violations pursuant to the body's policies." *Lucas*, 58 F.4th at 1144 (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). "*Monell* has been extended to 'private entities acting under color of state law,' such as medical contractors." *Id.* (quoting *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003)). To establish *Monell* liability, the plaintiff must allege an "(1) official policy or custom[,] (2) causation, and (3) state of mind." *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1239 (10th Cir. 2020) (alteration in original) (internal quotation marks omitted) (quoting *Burke v. Regalado*, 935 F.3d 960, 998 (10th Cir. 2019)). Policies or customs meeting the standard may arise from "a formal regulation or policy statement, an informal custom that amounts to a widespread practice, . . . and the deliberately indifferent failure to adequately train or supervise employees." *Id.* at 1239-40 (quoting *Pyle v. Woods*, 874 F.3d 1257, 1266 (10th Cir. 2017)).

Turn Key presses that Plaintiff "must demonstrate a direct causal link between the municipal action and the deprivation of federal rights to establish deliberate indifference under the *Monell* theory of municipal liability." (Dkt. No. 16 at 14.) It further contends that Plaintiff "must properly plead Mr. Patton's incapacitation from HSV encephalitis was directly caused by one of the alleged identified official policies or customs of Turn Key or that one of the alleged identified policies or customs of Turn Key was a moving force behind Mr. Patton's incapacitation." (*Id.* at 15.) Turn Key believes that Plaintiff has not alleged a sufficient nexus between Turn Key's policies

and Patton's alleged condition. (*Id.* at 16.)

Plaintiff alleges that Turn Key is responsible for "provid[ing] healthcare services in return for payment." (Dkt. No. 2-2 at 11.) She further alleges that Turn Key makes "policy choices to pursue profits at the direct detriment of medical care provided to inmates." (*Id.* at 12.) Her Complaint lists "lack of training" of certain Turn Key employees and the non-completion of medical intake screenings as part and parcel of these policy choices. (*Id.*) It also alleges that these policy choices caused Patton's "deprivation of medical care," "delay in evaluation and treatment," and "incapacitation." (*Id.* at 13.) This court cannot say with certainty whether Plaintiff will be able to prove causation, but at the pleading stage, the Complaint's allegations are sufficient to state a *Monell* claim. *See Quintana*, 973 F.3d at 1033-34 ("[W]e cannot determine from the face of the proposed [amended complaint] whether the plaintiffs will be able to substantiate their *Monell* claim.").

**C. Plaintiff's state law claims are dismissed pursuant to the GTCA.**

Turn Key requests that this court decline to exercise supplemental judication over Plaintiff's state cause(s) of action, should this court grant its motion to dismiss with respect to the federal claims. (Dkt. No. 16 at 19.) This court exercises its discretion to address the state law claims. *See United Int'l Holdings v. Wharf (Holdings)*, 210 F.3d 1207, 1220 (10th Cir. 2000) ("Once federal question jurisdiction exists, it is within the trial court's discretion to exercise supplemental jurisdiction over those state law claims that derive from a common nucleus of facts." (citing *Thatcher Enters. v. Cache Cnty. Corp.*, 902 F.2d 1472, 1477 (10th Cir. 1990))).

Plaintiff has filed a negligence claim and a negligent hiring retention, training, and supervision claim against Turn Key. (Dkt. No. 2-2 at 13-14.) Turn Key seeks dismissal of the state law claims, arguing (1) that it is immune from liability under the GTCA, Okla. Stat. tit. 51, § 152.1, and (2) that the claim is barred by the statute of limitations. (Dkt. No. 16 at 19.)

**1. Plaintiff's state law claims are not barred by the statute of limitations.**

Turn Key and Plaintiff spar over the applicable statute of limitations. (*Id.* at 20; Dkt. No. 20 at 19.) Turn Key argues that Okla. Stat. tit. 12, § 95(A)(11) bars Plaintiff's state law claims. (Dkt. No. 16 at 20.) That statute provides: "All actions filed by an inmate or by a person based upon facts that occurred while the person was an inmate in the custody of . . . a contractor of the State of Oklahoma," including "claims for injury to the rights of another, shall be commenced within one (1) year after the cause of action shall have accrued." 12 Okla. Stat. § 95(A)(11).

"However, where a prisoner, former prisoner, or, as in this case, prisoner's next friend brings a tort action against a private correctional facility, 'the GTCA is controlling.'" *Stewart v. Turn Key Health Clinics, LLC*, 2024 WL 4543201, at *4 (W.D. Okla. Oct. 22, 2024) (collecting cases). "The relevant notice provisions of the GTCA require a person to 'present a claim to the state or political subdivision for any appropriate relief . . . . within one (1) year of the date the loss occurs.'" *Id.* (quoting 51 Okla. Stat. § 156(A)-(B)). "'A person may not initiate a suit against the state or a political subdivision unless the claim has been denied in whole or in part' by the state or political subdivision." *Id.* "'Because under GTCA's § 157(A) the right to sue does not attach until the claim has been denied or is deemed denied,' the Oklahoma Supreme Court has held 'that causes of action brought under the GTCA do not accrue until that point.'" *Id.* (quoting *Brown v. Creek Cnty. ex rel. Creek Cnty. Bd. of Cnty. Comm'rs*, 164 P.3d 1073, 1075 (Okla. 2007)).

Turn Key argues that 12 Okla. Stat. § 95(A)(11) bars Plaintiff's state law claims (Dkt. No. 16 at 20), but the GTCA supersedes Oklahoma state law. *See Stewart*, 2024 WL 4543201, at *4. Turn Key also makes no argument as to the statute of limitations under the GTCA. Turn Key's argument to dismiss based on the statute of limitations thus fails.

**2. Turn Key's argument on immunity in tort pursuant to the GTCA warrants dismissal of the state law claims.**

The parties also dispute whether Turn Key is entitled to immunity under the GTCA. (Dkt No. 16 at 16; Dkt. No. 20 at 20.) The GTCA provides that "[t]he state, its political subdivisions, and all of their employees acting within the scope of their employment . . . shall be immune from liability for torts." Okla. Stat. tit. 51, § 152.1(A). "Beginning in 2007 section 152 of the GTCA stated an 'employee' includes licensed medical professionals under contract with city, county, or state entities and providing medical care to inmates or detainees in the custody or control of law enforcement agencies." *Sanders v. Turn Key Health Clinics*, 566 P.3d 591, 604 (Okla. 2025).

In making its argument for immunity, Turn Key relies on a 2018 Oklahoma Supreme Court case, *Barrios v. Haskell Cnty. Pub. Facilities Auth.*, 432 P.3d 233, 241 (Okla. 2018). Citing the GTCA immunity provisions, Turn Key argues that "state actors are exempt as a matter of law from liability for certain tort claims, such as those arising out of '[p]rovision, equipping, operation or maintenance of any prison, jail or correctional facility.'" (Dkt. No. 16 at 22.) It says "there is no question that Turn Key and its employees are insulated from liability in tort pursuant to the GTCA." (*Id.*) In response, Plaintiff presses that the statute "specifically applies to licensed medical professionals, not healthcare corporations such as Turn Key." (Dkt. No. 20 at 21.) It also points the court to *Lucas*, 58 F.4th 1127, which held that immunity of this type is premature at the motion to dismiss stage. *Id.*; *Lucas*, 58 F.4th at 1148.

The Tenth Circuit stated that determination of whether Turn Key was "entitled to immunity based on *Barrios*'s non-binding legal assumption, which was decidedly not an express statement of law[,]" is inappropriate at the pleading stage. *See Lucas*, 58 F.4th at 1148. However, the *Lucas* opinion was based on "no Oklahoma court" having developed footnote five (the relevant text from *Barrios*) at the time the *Lucas* decision was issued. *Id.* at 1147. Since then, the Oklahoma Supreme

Court has made clear that the GTCA:

> [M]akes licensed medical professionals to be "employees" of this state, regardless of the place in this state where duties as employees are performed, when the licensed medical professionals are under contract, including when under contract as an independent contractor, with city, county, or state entities and providing medical care to inmates or detainees in the custody or control of law enforcement agencies.

*Sanders*, 566 P.3d at 610. In *Sanders*, similar claims were brought against Turn Key as the ones Plaintiff alleges here. *See id.* at 595. There, plaintiff Sanders filed a petition alleging that Turn Key "caused the wrongful death of Sanders's wife as a result of her confinement" in an Oklahoma jail. *Id.* After four weeks in custody, she was transported to a hospital where she was diagnosed with, among other things, severe sepsis, acute kidney injury, and anemia. *Id.* The trial court in that case granted Turn Key's motion to dismiss pursuant to 12 O.S. § 2012(B)(6), finding Turn Key to be "immune from liability" under the GTCA. *Id.* Reviewing the trial court's grant of the motion to dismiss, the Oklahoma Supreme Court held that under the GTCA, "the status of an 'employee' occurs when the nature of the act is a (1) licensed medical professional, (2) under contract with a city county or state entity, (3) providing medical care, (4) to inmates or detainees in the custody or [control of] law enforcement agencies." *Id.* at 606. It further found that Sanders's petition alleged that "employees" of Turn Key were "contracted to provide medical care to inmates." *Id.* at 609.

Plaintiff's complaint here is materially similar to the *Sanders*'s complaint, in that it is "based upon Turn Key's status as an independent contractor employing (or contracting with) licensed medical professionals for the jail." *See id.* at 610. Thus, in accordance with *Sanders*, this court grants Turn Key's motion to dismiss as to the state law negligence claims.[4]

---

[4] Turn Key also argues that any claims brought by Melisha Miles individually should be dismissed. (Dkt. No. 16 at 18.) Plaintiff acknowledges that her claims are brought solely in her capacity as Patton's guardian. (Dkt. No. 20 at 23.)

III.    **CONCLUSION**

For the reasons stated, Defendant Turn Key's motion to dismiss (Dkt. No. 16) is **GRANTED IN PART** and **DENIED IN PART**.

DATED: May 16, 2025

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPÍ
United States Circuit Judge, Sitting by Designation